UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAMADA WORLDWIDE INC., a Delaware Corporation<br><br>Plaintiff,<br>v.<br><br>HIGHEND HOTEL GROUP OF AMERICA, LLC, a Wyoming Limited Liability Company; TARANDEEP KAUR, an individual; and RAVINDER SINGH, an individual,<br><br>Defendants. | Civil Action No. 20-14020 (JXN) (JRA)<br><br>**OPINION** |

**NEALS**, District Judge:

This matter comes before the Court on Plaintiff Ramada Worldwide Inc.'s ("Plaintiff") motion for summary judgment against Defendants Highend Hotel Group of America, LLC, ("Highend Hotel") and Tarandeep Kaur ("Kaur") (collectively, "Defendants") on the Second, Fourth, and Sixth Counts of the Complaint. (ECF No. 108). Jurisdiction and venue are proper pursuant to 28 U.S.C. §§ 1332 and 1391(b), respectively. The Court has carefully considered the parties' submissions and decides this matter without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, Plaintiff's motion for summary judgment (ECF No. 108) is **GRANTED**. Counts One, Three, and Five of the Complaint are **DISMISSED as moot**. Plaintiff is entitled to $400,000.00 in liquidated damages and $332,383.10 in interest on the liquidated damages award. The Court **RESERVES** decision on Recurring Fees and attorneys' fees pending the Court's review and receipt of supplemental submissions as instructed herein.

I.       **BACKGROUND AND PROCEDURAL HISTORY**[1]

This case arises out of Plaintiff's attempts to collect outstanding debts and damages from Defendants' default of the parties' franchise agreement. Plaintiff is a Delaware corporation with its principal place of business in New Jersey, which provides customers access to a "guest lodging facility" franchise network. (Plaintiff's Statement of Undisputed Material Facts (ECF No. 108-3) ("PSOF")[2] ¶¶ 1, 4; Defendants' Response to Plaintiff's Statement of Undisputed Facts (ECF No. 109) ("DRSOF") ¶¶ 1, 4). Plaintiff's franchise system is "comprised of federally-registered trade names, service marks, logos, and derivations thereof (the 'Ramada® Marks'), as well as the distinctive Ramada® System." (PSOF ¶ 5; DRSOF ¶ 5). Plaintiff neither owns nor operates any hotels. (*Id.*) Highend Hotel is a Wyoming limited liability company organized and maintaining a principal place of business in Wyoming. (PSOF ¶ 2; DRSOF ¶ 2). Kaur is a member of Highend Hotel. (PSOF ¶ 3; DRSOF ¶ 3).

On or about March 21, 2019, Plaintiff and Highend Hotel entered into a Franchise Agreement whereby Highend Hotel would operate a 200-room Ramada® guest lodging facility located at 300 West F Street, Casper, Wyoming 82601, designated as Site No. 18133-14878-07

---

[1] Pursuant to Local Rule 56.1, the party filing a motion for summary judgment must file a statement of material facts not in dispute in separately numbered paragraphs. *See* Local Civ. R. 56.1. The opponent shall furnish a responsive statement of material facts, addressing each paragraph and "indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents" submitted with the motion. *Id.* Any material fact not disputed "shall be deemed undisputed" for purposes of deciding the motion. *Id.* Defendants' response to Plaintiff's statement of material facts contains numerous improper responses. For numbered paragraphs 1, 4, 5, 38, 39, 40, and 45, Defendants stated "neither admit nor deny, and leave the Plaintiff to its proofs," but provide no explanation or reference to the record, which does not comply with local or Federal rules. *See* Local Rule 56.1; Fed. R. Civ. P. 56(c). For numbered paragraphs 34, 37, and 46, Defendants simply stated "Denied" without any citation to the record, which similarly fails to comply with local and Federal rules. *See id.* For numbered paragraphs 35, 36, 47, and 48, Defendants admitted to portions of the statement, but denied other portions without any citation to the record, which also fails to comply with local and Federal rules. *See id.* For those statements of fact that Defendant did not properly deny with citation to the record, and for which the Court finds support in the record, the Court deems them admitted. *See* Local Rule 56.1(a); Fed. R. Civ. P. 56(e)(2) and (3); *see also 7-Eleven, Inc. v. Sodhi*, No. 13-3715, 2016 WL 3085897, at *2 n.5 (D.N.J. May 31, 2016) (concluding that paragraphs in which defendants "disagreed" without support to the record were deemed undisputed).

[2] For brevity, all citations to the parties' Rule 56.1 statements incorporate the evidentiary citations contained therein.

(the "Facility"). (PSOF ¶ 6; DRSOF ¶ 6).[3] Pursuant to the Franchise Agreement, Highend Hotel was obligated to operate the Facility for a period of fifteen (15) years. (PSOF ¶ 19; DRSOF ¶ 19). The Franchise Agreement required that Highend Hotel make certain payments to Plaintiffs for royalties, system assessments, taxes, interest, and other fees (collectively, "Recurring Fees"), as well as interest on fees or debts that were past due. (PSOF ¶ 10; DRSOF ¶ 10; Affidavit of Kendra Mallet ("Mallet Aff."), Ex. A, ECF No. 108-5 at 22-23, 36-37, 48-50).[4] Moreover, the Franchise Agreement provided Plaintiff the opportunity to terminate the agreement before the end of the fifteen-year term in two circumstances: (1) if Highend Hotel discontinued operating the Facility as a Ramada hotel; and/or (2) if Highend Hotel lost possession or right to possess the Facility. (PSOF ¶ 22; DRSOF ¶ 22). In the event that the Franchise Agreement was terminated under one of these two circumstances, Section 12.1 of the Franchise Agreement provides that Highend Hotel would pay Plaintiff liquidated damages. (PSOF ¶ 23; DRSOF ¶ 23). Moreover, early termination made Highend Hotel responsible for reimbursing Plaintiff for any outstanding recurring fees and associated costs. (PSOF ¶¶ 33, 35; DRSOF ¶¶ 33, 35). Finally, as part of the Franchise Agreement, Kaur and Ravinder Singh[5] signed a Guaranty, which upon a default of the Franchise Agreement, makes them liable for money Highend Hotel owed to Plaintiff. (PSOF ¶ 30; DRSOF ¶ 30).

In a March 17, 2020 letter, Plaintiff acknowledged that Highend Hotel defaulted on the Franchise Agreement by ceasing to operate the Facility as a Ramada hotel, and informed Highend Hotel that, due to the default, it was terminating their agreement early. (PSOF ¶¶ 32-33; DRSOF ¶¶ 32-33). The letter further notified Highend Hotel that it was required to pay Plaintiff liquidated

---

[3] Kaur read and signed the Franchise Agreement on behalf of Highend Hotel. (PSOF ¶¶ 7-8; DRSOF ¶¶ 7-8).
[4] For sake of clarity, when citing the parties' briefs and supporting documents, the Court cites to the page number listed in the ECF header. If there is no page number listed in the ECF header, the Court cites to the page number listed in the respective document.
[5] On October 10, 2023, the Court granted Plaintiff's motion for default judgment against Singh as to Count Six only, and judgment was entered against Singh in the amount of $788,183.95. (*See* ECF No. 97).

damages and all outstanding recurring fees and costs, pursuant to the terms of the Franchise Agreement. (PSOF ¶ 33; DRSOF ¶ 33). To date, Defendants have made no payments to Plaintiff for liquidated damages or the outstanding Recurring Fees, or otherwise. (PSOF ¶ 35; DRSOF ¶ 35). As a result, Plaintiff now seeks to recover $909,810.20, inclusive of the outstanding Recurring Fees, liquidated damages, interest, attorneys' fees, and costs. (PSOF ¶ 48; DRSOF ¶ 48).

On October 7, 2020, Plaintiff filed the six-count Complaint against Defendants and Singh, seeking an Order that directed: (i) Highend Hotel to account for all revenue derived from the Facility (Count One); (ii) Highend Hotel to pay $400,000 in liquidated damages (Count Two); (iii) Highend Hotel to pay actual damages if liquidated damages are not awarded (Count Three); (iv) Highend Hotel to pay $105,538.54 in Recurring Fees (Count Four); (v) Highend Hotel to pay damages for unjust enrichment if Recurring Fees are not awarded (Count Five); and (vi) Singh and Kaur to pay liquidated or actual damages and Recurring Fees for Highend Hotel's breach, which Singh and Kaur are allegedly liable for under the Guaranty Agreement (Count Six). (ECF 1 ¶¶ 24-49).

Presently before the Court is Plaintiff's motion for partial summary judgment as to Counts Two (recovery of liquidated damages), Four (recovery of Recurring Fees), and Six (breach of the Guaranty Agreement) (ECF No. 108) ("Br."). Defendants opposed the motion (ECF No. 109) ("Opp'n"), and Plaintiff replied (ECF No. 110) ("Reply"). This matter is now ripe for consideration.

## II. LEGAL STANDARD

Summary judgment is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if there is a sufficient evidentiary basis on which a reasonable jury could find for the

4

non-moving party[;]" and "is material only if it might affect the outcome of the suit under governing law." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citation omitted). The moving party bears the "initial responsibility" of demonstrating the "absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party "must [then] counter with specific facts which demonstrate that there exists a genuine issue for trial." *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996) (citation omitted). There can be "no genuine [dispute] as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence. . . ." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (citation omitted). Rather, "[a]ll facts and inferences are construed in the light most favorable to the non-moving party." *Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (citation omitted). And credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). Thus, the court's role is "to determine whether there is a genuine [dispute] for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

### III. DISCUSSION

#### a. Breach of the Franchise Agreement

Plaintiff argues entitlement to summary judgment on liability as to the Second and Fourth Counts of the Complaint because Highland unilaterally terminated the Franchise Agreement and failed to pay outstanding Recurring Fees or liquidated damages required by the Franchise Agreement. (Br. at 9-10).

5

To state a claim for breach of contract under New Jersey law, a plaintiff must establish four elements: (1) the parties entered into a valid contract, (2) the plaintiff performed its contractual obligations, (3) the defendant did not perform its obligations, and (4) the defendant's breach causes the plaintiff to incur damages. *Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021) (quoting *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016)); *Accounteks.Net, Inc. v. CKR Law, LLP*, 2023 WL 3331802, at *8 (N.J. Super. Ct. App. Div. May 9, 2023).[6]

Under New Jersey law, "[w]hen the 'terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written.'" *Travelodge Hotels, Inc. v. Elkins Motel Assocs., Inc.*, No. 03-799, 2005 WL 2656676, at *4 (D.N.J. Oct. 18, 2005) (quoting *City of Orange Twp. v. Empire Mortg. Servs., Inc.*, 775 A.2d 174, 179 (N.J. Super. Ct. App. Div. 2001)). Whether a contract is unambiguous is a question of law for the court and properly considered at summary judgment. *Id.*; *see also International Union, UAW v. Mack Trucks, Inc.*, 917 F.2d 107, 111 (3d Cir. 1990); *J.I. Hass Co., Inc. v. Gilbane Bldg. Co.*, 881 F.2d 89, 92 (3d Cir. 1989).

Plaintiff has established that no genuine issues of material fact exist as to the breach of the Franchise Agreement claim. Plaintiff established that the parties entered into a valid contract, which Kaur had an opportunity to read before signing, (PSOF ¶ 6; DRSOF ¶ 6); that Plaintiff performed its obligations by providing Highend Hotel the right to use the Ramada® trade name, trademarks, and service marks, (PSOF ¶ 34; DRSOF ¶ 34); that Defendants did not perform their obligations by failing to pay the outstanding Recurring Fees or liquidated damages due under the Franchise Agreement and Guaranty, along with any interest for the fees and damages, (PSOF ¶¶

---

[6] Section 17.6.1 of the Franchise Agreement provides "[t]his Agreement will be governed by and construed under the laws of the State of New Jersey[.]" (Mallet Aff., Ex. A at 35)

35-36; DRSOF ¶¶ 35-26); and that Defendants' breach caused Plaintiff's damages, (PSOF ¶ 48; DRSOF ¶ 48).

To defeat summary judgment, Defendants counter that Plaintiff has materially breached its obligations under the Franchise Agreement by failing to provide them with "help," notwithstanding Plaintiff's promise to provide Defendants with training and assistance with operating the Facility. (Opp'n at 6-7). "New Jersey courts recognize that a material breach by either party to a bilateral contract excuses the other party from rendering any further performance." *Elkins Motel Assocs.*, 2005 WL 2656676, at *5; *see Nolan ex rel. Nolan v. Lee Ho.*, 577 A.2d 143, 146 (N.J. 1990) ("[W]hen there is a breach of a material term of an agreement, the non-breaching party is relieved of its obligations under the agreement."). "Under basic contract principles, when one party to a contract feels that the other contracting party has breached its agreement, the non-breaching party may either stop performance and assume the contract is avoided, or continue its performance and sue for damages." *S&R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 376 (3d Cir. 1992). Nevertheless, "'[u]nder no circumstances may the non-breaching party stop performance and continue to take advantage of the contract's benefits.'" *Ramada Worldwide, Inc. v. Hotel of Grayling, Inc.*, No. 08-3845, 2010 WL 2674460 at *9 (D.N.J. June 30, 2010) (quoting *S&R Corp.*, 968 F.2d at 376).[7]

While the Court recognizes "[w]hether conduct constitutes a breach of contract and, if it does, whether the breach is material are ordinarily jury questions," *Travelodge Hotels, Inc. v. Honeysuckle Enters.*, 357 F. Supp. 2d 788, 797 (D.N.J. 2005) (quoting *Magnet Res.*, 723 A.2d at

---

[7] For contracts involving "a series of acts over a long term, a material breach may arise upon a single occurrence or consistent recurrences which tend to defeat the purpose of the contract." *Magnet Res., Inc. v. Summit MRI, Inc.*, 723 A.2d 976, 981 (N.J. Super. Ct. App. Div. 1998) (cleaned up). In applying the test of materiality, "a court should evaluate the ratio quantitatively which the breach bears to the contract as a whole, and secondly the degree of probability or improbability that such a breach will be repeated." *Id.* at 981 (cleaned up).

7

981), the Court finds Defendants have failed to set forth sufficient facts to demonstrate that a genuine issue of material facts exists. *See Orson*, 79 F.3d at 1366. In support of its contention that Plaintiff materially breached its obligations under Section 4 of the Franchise Agreement, Defendants only cite to a brief portion of Kaur's deposition testimony:

> Q. And why did you have to change the franchise?
>
> A. We were asking them -- asking Ramada and Wyndham for help. And they gave us a PIP. And I did tell them, "There's no way we can do this PIP right now." And I personally was not doing all this stuff because, as I told you, I don't understand.
>
> And then I think Angie was our GM at that time. She was reaching out. And every time when I asked her, "Did you get a chance to talk with them, what are they saying" -- like the whole staff, we did mention a few peoples' names -- and they were all just like, "They're not returning our calls; nobody is helping us; this is so hard for us to just continue what we're doing, whatever we are doing, if they don't want to help us."

(Certification of Bryan P. Couch ("Couch Cert."), Ex. B, ECF No. 108-4 at 47).

As Plaintiff argues, and the Court agrees, Kaur's testimony neither relates to any obligations set forth in Section 4 of the Franchise Agreement nor outlines how Plaintiff failed to satisfy those obligations. (Reply at 6). Rather, having reviewed the Franchise Agreement, the Court finds its unambiguous language provides that Plaintiff grants discretionary authority to provide the training referenced in Kaur's testimony. For instance, Section 4.1 of the Franchise Agreement provides: "[Plaintiff] may offer (directly or indirectly by subcontracting with an affiliate or a third party) general manager training, remedial training, re-certification training, and supplemental training." (Mallet Aff., Ex. A at 17). Furthermore, in Section 4.3.1, the Franchise Agreement addresses Plaintiff's marketing obligations and states, in pertinent part:

> [Plaintiff] will determine in our discretion[:] (i) The nature and type of media placement, (ii) The allocation (if any) among international, national, regional and local markets, and (iii) The nature and type of advertising copy, other materials and programs. . . [Plaintiff] do[es] not promise that the Facility or [Highend Hotel] will benefit directly or proportionately from marketing activities.

8

The language of these Sections provides Plaintiff with the authority to determine the level of training, including marketing training, it shall provide.

In a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Unsupported allegations, subjective beliefs, or argument alone, however, cannot forestall summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). The Court finds there are no genuine issues of material fact as to whether Plaintiff's purported refusal to provide Defendants with training and assistance constituted a material breach of the Franchise Agreement, and whether such conduct relieves Defendants of their obligations under the Franchise Agreement.

Defendants further argue that the *force majeure* clause of the Franchise Agreement excused them "from continuing their relationship with [ ] Plaintiff." (Opp'n at 7). However, courts have found *force majeure* clauses constitute affirmative defenses. *See Vita Grp. LLC v. Compass Grp. USA, Inc.*, No. 21-16291, 2022 WL 1261536, at *4 (D.N.J. Apr. 28, 2022) ("A claim of *force majeure* excuses performance and defeats a breach of contract claim as an affirmative *defense*[.]"); *Ricoh USA, Inc. v. Innovative Software Sol., Inc.*, No. 20-4025, 2020 WL 7024290, at *7-8 (E.D. Pa. Nov. 30, 2020) ("'A claim of *force majeure* is equivalent to an affirmative defense.'" (quoting 30 Richard Lord, *Williston on Contracts* § 77:31 (4th ed. 2008))); *see also Facto v. Pantagis*, 915 A.2d 59, 62-63 (N.J. Super. Ct. App. Div. 2007) (recognizing that the *force majeure* clause in the parties' contract operated as an affirmative defense to bar plaintiffs' breach of contract claim against defendant). Defendants did not raise this affirmative defense in its Answer and it is accordingly waived. *See Elliot & Frantz, Inc. v. Ingersoll-Rand Co.*, 457 F.3d 312, 321 (3d Cir. 2006); *see also Sterten v. Option One Mortg. Corp.*, 479 F. Supp. 2d 479, 484-85 (E.D. Pa. 2007)

9

("Affirmative defenses are generally waived if not pleaded in the defendant's answer or raised in an appropriate motion.").

As such, the Court finds Defendants have not set forth any evidence that could establish a genuine issue of material fact that would preclude granting summary judgment. Accordingly, the Court grants summary judgment as to Counts Two and Four of the Complaint.[8]

### b. **Breach of Guaranty**

To be entitled to a judgment on a guaranty, a plaintiff must demonstrate:

1) execution of the guarantee by the guarantor (i.e., that it was the defendant who signed the guarantee);

2) the principal obligation and terms of the guaranty;

3) the lender's reliance on the guaranty in extending monies to the borrower;

4) default by the principal obligator;

5) written demand for payment on the guarantee;

6) failure of the guarantor to pay upon written demand.

*U.S. on Behalf of Small Bus. Admin. v. DelGuercio*, 818 F. Supp. 725, 727-28 (D.N.J. 1993) (citing 38 C.J.S. Guaranty §§ 8-14 and 38 Am. Jur. 2d § 119). Here, Defendants admit Kaur and Singh provided Plaintiff with a Guaranty. (PSOF ¶ 29; DRSOF ¶ 29). The terms of the Guaranty are unambiguous and require that "[u]pon default by Highend Hotel] and notice from [Plaintiff]," Kaur and Singh "will immediately make each payment and perform or cause [Highend Hotel] to perform, each unpaid or underperformed obligation of [Highend Hotel] under the Agreement."

---

[8] Count Five of the Complaint is a claim for unjust enrichment, which is premised on Highend Hotel's failure to pay Recurring Fees owed under the Franchise Agreement. (ECF No. 1 ¶¶ 42-45). "Recovery for unjust enrichment . . . is an equitable remedy that is only available when there is no express contract providing for renumeration." *American Rubber & Metal Hose Co. v. Strahman Valves, Inc.*, No. 11-1279, 2011 WL 3022243, at *8 (D.N.J. July 22, 2011) (citing *Caputo v. Nice–Pak Prods.*, 693 A.2d 494, 498 (N.J. Super. Ct. App. Div. 1997)). As the Court has found the parties have entered into an express contract, and because Plaintiff also seeks damages for the Recurring Fees pursuant to the contract, the Court will dismiss Count Five as moot.

(Mallet Aff., Ex. B). The express terms of the Guaranty indicate that its execution induced Plaintiff to enter into the Franchise Agreement. (*Id.*). The record is also clear that Highend Hotel defaulted on its obligations under the Franchise Agreement and that Plaintiff provided Defendants with written notice of default and demand for payment on the Guaranty. (PSOF ¶¶ 32-33, 35-36; DRSOF ¶¶ 32-33, 35-36). Finally, Kaur admits that she did not pay any amounts owed to Plaintiff. (PSOF ¶ 36; DRSOF ¶ 36). As a result, there is no genuine issue of material fact as to the breach of the Guaranty and summary judgment will be granted as to Count Six of the Complaint.

### c. Remedies for Breach

As to the remedies for Defendants' breach of the Franchise Agreement, Plaintiff seeks summary judgment on the issues of Recurring Fees, liquidated damages, attorneys' fees and costs, and interest where applicable. The Court addresses each category in turn.

#### i. Recurring Fees

Plaintiff seeks $166,885.09 in Recurring Fees, inclusive of interest. (Br. at 13). Defendants argue Plaintiff has failed to set forth sufficient evidence to demonstrate that the "essential contingencies" have occurred that warrant entitlement to Recurring Fees. (Opp'n at 9-12).

Section 7 of the Franchise Agreement defines Recurring Fees as consisting of: (1) royalties "equal to four and one half percent (4.5%) of Gross Room Revenues of the Facility accruing during the calendar month . . . until the end of the Term"; (2) a marketing contribution and a basic reservation fee accruing "until the end of the Term"; (3) taxes "equal to any federal, state or local sales, gross receipts, use, value added, excise or similar tax assessed . . . on the Recurring Fees . . . when due"; (4) interest; and (5) a relicense fee when applicable. (Mallet Aff., Ex. A at 22-23). Plaintiff has provided an invoice referencing outstanding amounts owed between September 2019 through September 2022. (PSOF ¶ 37; DRSOF ¶ 37; Mallet Aff., ¶ 36, Ex. D). The Court finds

11

the unambiguous language of the Franchise Agreement indicates Plaintiff is entitled to Recurring Fees. However, the Court finds it is unclear from the invoice before the Court whether all of the outstanding amounts constitute Recurring Fees. Additionally, it is unclear from the invoice and Franchise Agreement what constitute "Finance Charges," which total $64,859.46. Plaintiff shall submit supplemental documentation outlining the requested Recurring Fees.

### ii. **Liquidated Damages**

Plaintiff seeks $400,000.00 in liquidated damages and $285,237.96 in interest. (Br. at 14-17). Defendants do not dispute the base amount of liquidated damages, "if recoverable," but argue Plaintiff would not be entitled to interest on such damages. (Opp'n at 8-12).

"Under New Jersey law, liquidated damages clauses may only be enforced if they reasonably forecast the harm resulting from breach." *Knights Franchise Sys., Inc. v. First Value RC, LLC*, No. 13-4976, 2017 WL 1170849, at *3 (D.N.J. Mar. 29, 2017) (citing *Wasserman's Inc. v. Twp. of Middletown*, 645 A.2d 100, 106 (N.J. 1994)). "[W]hen a liquidated damages clause for a commercial transaction is negotiated by parties with comparable bargaining power, the ultimate issue is whether the amount of liquidated damages is reasonable, either at the time of contract formation or the breach." *Ramada Worldwide Inc. v. Columbia SC Hospitality, LLC*, No. 17-13020, 2018 WL 3105421, at *5 (D.N.J. June 25, 2018) (citing *Wasserman's*, 645 A.2d at 107); *see also Norwest Bank Minn., N.A. v. Blair Rd. Assocs., L.P.*, 252 F. Supp. 2d 86, 94 (D.N.J. 2003) ("Liquidated damages provisions in a commercial contract between sophisticated partes are presumptively reasonable and the party challenging the clause bears the burden of proving its unreasonableness." (internal quotation marks omitted)).[9] Prejudgment interest on liquidated

---

[9] During her deposition, Kaur testified that she was not represented by counsel when she signed the Franchise Agreement on Highend Hotel's behalf. (*See* Couch Cert., Ex. B at 37:22-38:21). This does not determine bargaining power. Rather, as the Court expressed in *Knights Franchise Systems*, "When a contract is negotiated *between two commercial parties*, there should be a presumptive validity of a liquidated damages clause." 2017 WL 1170849, at *3

12

damages claims is permitted in breach of contract claims, and "'will be awarded from the time it accrues until the time judgment is entered.'" *Ramada*, 2018 WL 3105421, at *5 n.2 (quoting *Knights Franchise Sys.*, 2017 WL 1170849, at *4).

Section 12.1 of the Franchise Agreement sets out a formula for liquidated damages. (*See* Mallet Aff., Ex. A at 29). Here, the applicable formula is "2,000 multiplied by the number of guest rooms that [Plaintiff] authorized [Highend Hotel] to operate under Schedule B of this Agreement, regardless of any room reduction." (*Id.*). Pursuant to Schedule B of the Franchise Agreement, Defendants were authorized to operate 200 guest rooms. (*Id.* at 47). The rationale behind the Franchise Agreement's liquidated damages clause is "to forecast . . . the nature of lost Recurring Fees that [Plaintiff] would otherwise have received but for the premature termination." (Mallet Aff., ¶ 38). The Court is satisfied that $400,000.00 in liquidated damages reasonably forecasts the harm that Plaintiff would suffer as a result of a breach of the Franchise Agreement, and is not disproportionate to the loss Plaintiff would likely suffer as a result of early termination. *See Elkins Motel Assocs.*, 2005 WL 2656676, at *10; (*see also* Mallet Aff., Ex. A at 29).

Further, the Court agrees with Plaintiff that the prejudgment interest rate of 1.5 percent applies to the liquidated damages sum. (*See* Mallet Aff., Ex. A at 23 (establishing a 1.5% interest rate on all unpaid sums)); *see also Travelodge Hotels, Inc. v. Honeysuckle Enters., Inc.*, No. 02-2889, 2005 WL 3164205, at *10 (D.N.J. Nov. 10, 2005), *aff'd*, 244 F. App'x 522 (3d Cir. 2007) (finding plaintiff was "entitled to prejudgment interest at a rate of 1.5% per month" where the license agreement provided for monthly interest at that rate). Section 12.1 of the Franchise Agreement provides, in pertinent part, Highend Hotel "will also pay any applicable Taxes assessed

---

(emphasis added) (citing *Wasserman's*, 645 A.2d at 108). The Court finds Plaintiff and Highend Hotel both constituted as "commercial parties," and Plaintiff, as the party challenging the applicability of the liquidated damages clause, has failed to set forth any evidence otherwise.

on such payment and *Interest* calculated under Section 7.3 accruing from 30 days after the termination." (Mallet Aff., Ex. A at 29) (emphasis added). Section 7.3 of the Franchise Agreement expressly states: "Interest is payable when [Highend Hotel] receive[s] [Plaintiff's] invoice on any past due amount payable under this Agreement at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid." (*Id.* at 23).

Notwithstanding, the Court disagrees with Plaintiff as to the date that liquidated damages began to accrue. Plaintiff contends the accrual date is March 19, 2020, "thirty (30) days from the date of termination." (Br. at 17). However, Section 11.2 of the Franchise Agreement provides Plaintiff "may terminate this Agreement when we send written notice to you or such later date as required by law or as stated in the default notice, when . . . (2) [Highend Hotel] discontinue[s] operating the Facility as a 'Ramada' or 'Ramada by Wyndham[.]'" Under this provision, it was Plaintiff that terminated the Franchise Agreement at its option by sending Defendants a letter dated March 17, 2020, effectively declaring Defendants in breach of the Franchise Agreement. As such, the liquidated damages accrued thirty days after that letter, on April 16, 2020. Accordingly, Plaintiff is entitled to $332,383.10 in interest[10] – April 16, 2020 (the first day liquidated damages were due under Section 12.1 of the Franchise Agreement, i.e., thirty days after the March 17, 2020 termination date) through the date of this Opinion, November 26, 2024, a period of 1,685 days. *See Days Inn Worldwide, Inc. v. Savita Hosp. Grp.*, No. 13-2863, 2014 WL 3748204, at *3-4 (D.N.J. July 28, 2024) (awarding prejudgment interest on liquidated damages from thirty days

---

[10] The interest rate of 1.5 percent per month is equivalent to a rate of 18 percent per year. (*See* Mallet Aff., ¶ 45). Eighteen percent per year of the $400,000.00 liquidated damages amount is $72,000.00. (*See id.*). That amount divided by 365 days in a year equals the amount of interest due *per diem*: approximately $197.26. (*See id.*). From April 16, 2020 (the first day liquidated damages were due under Section 12.1 of the Franchise Agreement, i.e., thirty days after the March 17, 2020 termination date), to the date of this Opinion, 1,685 days elapsed. Thus, the product of $197.26 multiplied by 1,685 days equals the prejudgment interest due for the period: $332,383.10.

after the plaintiff terminated the franchise agreement by sending a letter declaring the plaintiff was in breach through the day judgment was entered); *Honeysuckle Enters.*, 2005 WL 3164205, at *10 (awarding prejudgment interest on liquidated damages from thirty days after the plaintiff sent acknowledgment of termination through the date of judgment). Liquidated damages plus interest therefore totals $732,383.10.[11]

### iii. **Attorneys' Fees and Costs**

Finally, Plaintiff argues it is entitled to $55,854.50 in attorneys' fees and $1,832.65 in costs. (Br. at 17-18). Defendants argue Plaintiff is not entitled to attorneys' fees because it has not set forth sufficient proof of the fees. (Opp'n at 12-13).

Section 17.4 provides, in pertinent part: "The non-prevailing party will pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this Agreement or collect amounts owed under this Agreement." (Mallet Aff., Ex. A at 34). The Court is satisfied that Plaintiff is entitled to reasonable attorneys' fees and costs pursuant to Section 17.4 of the Franchise Agreement. *See Jackson Hewitt, Inc. v. Barnes Enters.*, No. 10-05108, 2012 1600572, at *3 (D.N.J. May 7, 2012) (awarding attorneys' fees and costs per franchise agreement); *Red Roof Franchising, LLC v. AA Hosp. Northshore, LLC*, 877 F. Supp. 2d 140, 154 (D.N.J. 2012) (holding that plaintiff was entitled to attorneys' fees and costs because "[d]efendants d[id] not dispute the provision in the franchise agreement or guarantee"). However, Plaintiff "does not provide any bills or invoices to support" their representation of attorneys' fees and costs." *BMO Harris Bank, N.A. v. Naileen Transp. Corp.*, No. 21-14002, 2021 WL 5506911, at *4 (D.N.J. Nov. 19, 2021). Without such details, the Court cannot determine whether Plaintiff's request for

---

[11] Count Three of the Complaint is a claim for actual damages, sought only if liquidated damages were denied. (*See* ECF No. 1 ¶¶ 34-37). Therefore, Count Three will be dismissed as moot. The award of liquidated damages also eliminates the need for actual damages; therefore, Count One, which seeks an accounting, will also be dismissed as moot. (*See* ECF No. 1 ¶¶ 24-27).

attorneys' fees and costs are reasonable and appropriate. *See id.*; *see also* L. Civ. R. 54.2(a) (providing that an attorney seeking fees must provide a description of the services rendered, including the date of service, the billing rate, and who performed the work). Plaintiff is provided leave to submit documentation to support its attorneys' fees and costs pursuant to Local Civil Rule 54.2.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgment (ECF No. 108) is **GRANTED** as to Counts Two, Four, and Six. Counts One, Three, and Five of the Complaint are **DISMISSED as moot**. Plaintiff is entitled to $400,000.00 in liquidated damages and $332,383.10 in interest on the liquidated damages award. The Court **RESERVES** decision on Recurring Fees and attorneys' fees pending receipt and review of supplemental submissions as directed by the Court.

An appropriate Order accompanies this Opinion.

DATED: 11/26/2024

HONORABLE JULIEN XAVIER NEALS
United States District Judge